OPINION *Page 3 
{¶ 1} Defendant-appellant, Veronica Blake, appeals from a Columbiana County Municipal Court decision awarding judgment in favor of plaintiff-appellee, the New England Square Condominium Association, in the amount of $2,759.37 on appellee's claim for unpaid condominium fees and insurance fees. Appellant also appeals from a judgment denying her request to amend her counterclaim.
 {¶ 2} As this court observed in a March 23, 2007 journal entry, this case has a "long and tortuous history." It has been before this court once already on direct appeal, New England Square Condominium Assn. v.Blake, 7th Dist. No. 02-CO-64, 2004-Ohio-1551, and twice on mandamus actions filed by appellant against the trial court judges, Blake v.Roberts, 7th Dist. No. 05-CO-17, 2005-Ohio-4377, and State ex rel. Blakev. Robb, 7th Dist. No. 05-CO-51, 2006-Ohio-6130.
 {¶ 3} The case originated in 2001, when appellee filed a complaint against appellant in small claims court seeking money it alleged she owed for her monthly condominium fees and insurance fees. Appellant filed an answer and counterclaim against appellee and also sought to join appellee's past and present officers, the previous owner of the condominium, the realty company involved in the sale of the condominium, and two insurance companies. Appellant asserted that she failed to pay her fees because appellee failed in its repair and maintenance duties to her regarding her condominium. In her counterclaim, appellant sought damages "claiming, inarticulately, that she is being charged fees based on too much square footage, that she was not completely reimbursed for certain repairs or improvements she made, that the lack of repairs and maintenance has affected the insurance coverages, that the former owner and/or realty company failed to disclose the problems encountered and failed to provide copies of bylaws and insurances until after her `rights' were affected. She appears to seek reimbursement of her maintenance and insurance fees for 72 months prior to * * * [appellee's] filing, and the dismissal of the complaint." New England, supra, at ¶ 3.
 {¶ 4} At some point, the trial court dismissed the counterclaim as to all parties except appellee. Appellee took appellant's deposition and subsequently *Page 4 
moved for summary judgment. The trial court granted summary judgment in favor of appellee in the amount of $713.73, plus interest, and dismissed appellant's counterclaim. Appellant appealed.
 {¶ 5} On appeal, this court affirmed the trial court's dismissal of most of appellant's counterclaim. However, we found that the dismissal of appellant's counterclaim against appellee for failure to maintain/repair the premises was in error. We further found that genuine issues of material fact remained to be litigated as to appellee's complaint. Thus, we remanded the case to the trial court.
 {¶ 6} The trial court set the matter for a trial. In the meantime, appellant requested that she be permitted to amend her counterclaim. The trial court denied this request. Appellant then filed a motion to reconsider the decision, which the trial court also denied. Appellant next filed a notice of appeal from the denial. This court dismissed the appeal, finding that the entry appealed from was not a final, appealable order.
 {¶ 7} The matter proceeded to a bench trial on June 15, 2004. The trial court determined that appellant was obligated to pay appellee dues and insurance fees and that she was delinquent in doing so. It found that the amount due was $2,826.70 as of June 10, 2004. The court then analyzed appellant's counterclaims. Appellant claimed that appellee did not properly maintain and repair water lines to her condominium, did not properly maintain the enclosed porch and open deck, did not properly maintain the stairs leading to her condominium, and charged her for lighting certain common areas. The trial court found that it is appellee's responsibility to maintain the common areas of the condominium property and it is the responsibility of each individual property owner to maintain their respective condominiums. The court noted that the issue was whether such things as plumbing lines, the enclosed porch, the open deck, the stairs, and the storage unit were a part of appellant's individual unit or of the common area. The court found that these areas were part of appellant's individual unit. However, it also found that appellant had been charged on her electric bill for lighting a common area. It found that she *Page 5 
was entitled to $67.33. Thus, the court subtracted this amount from the amount it found appellant owed appellee and entered judgment in appellee's favor for $2,759.37, plus interest. Appellant filed a timely notice of appeal on July, 23, 2004, from this judgment.
 {¶ 8} Appellant filed her first "brief" with this court on September 20, 2004. However, on appellee's motion, we found that the brief was "crude" and "convoluted" and that neither this court nor appellee could analyze appellant's claims. Thus, we granted appellant the opportunity to file a new brief, which she did.
 {¶ 9} Appellant also filed with this court an "Agreed Statement as the record on appeal." But on appellee's motion, we determined that we could not consider it because (1) it was not agreed to by appellee and (2) it was not approved by the trial court. Consequently, we granted appellant leave to file a trial transcript or an approved statement of the evidence. Appellant then filed a complaint for a writ of mandamus to compel the trial court judge and clerk of courts to approve her "Agreed Statement" of the record. We dismissed the action. See, Blake, 7th Dist. No. 05-CO-17.
 {¶ 10} Appellant next filed another mandamus action against the successor trial court judge and the clerk of courts, this time curing the deficiency on which we based the previous dismissal. This court granted summary judgment to the judge and clerk of courts and dismissed the action. See, State ex rel. Blake, 05-CO-51.
 {¶ 11} Appellant finally submitted her third brief on April 20, 2007.[1] Additionally, appellant eventually filed a proper transcript of the trial.
 {¶ 12} Appellant raises five assignments of error. At the outset, it should be noted that appellant's brief is convoluted at best. It is entirely handwritten and portions are challenging to decipher. Her allegations and arguments are particularly difficult to understand or make sense of and she has failed to comply with numerous provisions of the Appellate Rules. However, in the interest of justice, this court has determined that we will consider her "brief." *Page 6 
 {¶ 13} Appellant's first assignment of error states:
 {¶ 14} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN RENDERING JUDGMENT BASED ON THE USE OF CONDOMINIUM INSTRUMENTS [sic.] THAT IS IN NONCOMPLIANCE WITH THE UNIFORM CONDOMINIUM ACT AND OHIO REVISED CODES [sic.] 5311."
 {¶ 15} Appellant seems to argue that the trial court should not have admitted Plaintiff's Exhibit 6 into evidence. Exhibit 6 is appellee's Restated Declaration (Declaration). Appellant asserts that the requirements set out in the Declaration should not have applied to her because her condominium was conveyed in violation of R.C. 5311.06(A)(1). R.C. 5311.06(A)(1) provides: "A declaration of condominium property shall be filed and recorded in the office of the recorder of the county or counties in which the land or water slips described in the declaration are situated. All original declarations when filed shall be accompanied by a set of drawings of the condominium property * * * and a true copy of the bylaws of the unit owners association * * *." Appellant argues that the Declaration was invalid because it was not accompanied by a set of drawings of the condominium property. Appellant further seems to assert the floor plan set out in the Declaration is inaccurate as to its depiction of the carport.
 {¶ 16} Appellant failed to object to the admission of Exhibit 6 at trial. In fact, before admitting Exhibit 6, the court asked appellant's counsel if he had any objection to it, to which he responded, "no." (Tr. 26). Therefore, she has waived this issue on appeal absent plain error.
 {¶ 17} Plain error is one in which but for the error, the outcome would have been different. State v. Long (1978), 53 Ohio St.2d 91, 97,372 N.E.2d 804.
 {¶ 18} Generally, all relevant evidence is admissible. Evid. R. 402. Relevant evidence is any evidence tending to make a fact at issue more or less probable than without that evidence. Evid. R. 401. *Page 7 
 {¶ 19} As will be seen later in this opinion, Exhibit 6 was highly relevant in determining which areas of the condominium property were common areas and which areas were a part of the individual condominiums.
 {¶ 20} Furthermore, R.C. 5311.06(A)(1) requires that a set of drawings of the condominiums be filed in the recorder's office along with the declaration. However, the fact that the drawings must be filed in the recorder's office has no effect on what a party may introduce as an exhibit at trial.
 {¶ 21} And there is no indication that had the drawings been attached to Exhibit 6 that it would have altered anything in Exhibit 6. Appellant can point to no way that the result of the trial would have been different had Exhibit 6 also included the drawings. Thus, there is no plain error. Accordingly, appellant's first assignment of error is without merit.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN THE AMOUNT IN CONTROVERSY EXCEEDED THE AMOUNT OF ITS JURISDICTION."
 {¶ 24} Here, appellant asserts that the amount in controversy in this case exceeded the municipal court's jurisdictional limit and the matter should have been transferred to the common pleas court. She seems to contend that the amount of her counterclaim exceeded $400,000.
 {¶ 25} While appellee is correct in asserting that appellant failed to raise this issue until now, the issue is not waived. Subject-matter jurisdiction cannot be waived. State ex rel. White v. Cuyahoga Metro.Hous. Auth. (1997), 79 Ohio St.3d 543, 544, 684 N.E.2d 72. Thus, we will consider appellant's argument here.
 {¶ 26} This case was determined in municipal court. A municipal court has original jurisdiction in those cases in which the amount claimed by any party does not exceed $15,000. R.C. 1901.17.
 {¶ 27} In her counterclaim, appellant's prayer for relief provides: *Page 8 
 {¶ 28} "WHEREFORE, this Defendant Counter-Claimant prays for the following:
 {¶ 29} "FIRST, for dismissal of claim by Plaintiffs, New England Square Board Officers, the amount of $1462.66.
 {¶ 30} "SECOND, if a dismissal is not herby [sic.] rendered for the claim of unpaid maintenance fees and insurance, that the Defendant Counter-Claimant, Veronica A. Blake, have a[n] off-setting judgment against the New England Square Board Officers, upon their proof of maintenance issues involved on maintenance fees and insurance paid by Defendant Counter-Claimant, Veronica A. Blake, accruing in the same format as the Plaintiffs New England Square Board Officers, 10% per month to be applied to payments made for some 72 months prior to the commencement of this claim by Defendant Counter-Claimant, Veronica A. Blake.
 {¶ 31} "THIRD, That this Defendant Counter-Claimant, Veronica A. Blake, shall have any other and all further relief as the court shall deem just and equitable as set forth by Ohio Revised Codes * * * ."
 {¶ 32} Appellant's demand for judgment in no way makes the court aware of what amount she is seeking. Nor does appellant make clear that she is seeking more than $15,000.
 {¶ 33} Furthermore, at trial appellant offered testimony and evidence as to her alleged damages. She testified that appellee owed her $3,642.60 for condo fees and interest that she believed she should be reimbursed because appellee failed to make certain repairs to her condo. (Tr. 64). She also elicited testimony from Margery Sponcil [sic.], appellee's past president, that if the court determined that appellee was responsible for repairing the carport roof, then it owed appellant $250. (Tr. 208-209). Finally, appellant submitted an exhibit listing the charges she claims she incurred for lighting common areas. (Defendant Ex. B). This listed the amount due to appellant as $2,167. *Page 9 
 {¶ 34} Appellant submitted no other evidence of damages at trial. The total amount of damages she claimed at trial was $6,059.60. This amount is well below the $15,000 jurisdictional limit.
 {¶ 35} Thus, the trial court had proper subject matter jurisdiction of this case. Accordingly, appellant's second assignment of error is without merit.
 {¶ 36} Appellant's third assignment of error states:
 {¶ 37} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT TO OVERRULE MOTION TO AMEND TO INCLUDE DAMAGES SUSTAINED IN CONDOMINIUM, AS A RESULT OF THE ASSOCIATION[']S FAILURE TO MAKE ADEQUATE REPAIRS TO THE COMMON AREA, THAT EXCEEDED [$]23,121.94, WHERE THE ORIGINAL COMPULSORY COUNTERCLAIM PRAYED FOR RELIEF PURSUANT [TO] O.R.C. 5302.30,5311.01, 5311.03, 5311.04, 5311.05, 5311,06, 5311.14, 5311.16, 5311.25, 5311.26, 5311.27."
 {¶ 38} Here appellant asserts the trial court erred in denying her request to amend her counterclaim. She wished to assert a claim that appellee failed to make adequate repairs to the common areas and that this failure resulted in some sort of mold damage.
 {¶ 39} We review the trial court's decision denying a party leave to amend for abuse of discretion. Wilmington Steel Products, Inc. v.Cleveland Elec. Illuminating Co. (1991), 60 Ohio St.3d 120, 122,573 N.E.2d 622. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 40} Civ. R. 15(A) provides that the court shall freely give leave to amend a claim "when justice so requires." When determining whether a motion to amend should be granted, courts should look to such things as the timeliness of the motion and whether there is any support for the new matters to be pleaded. Wilmington Steel Products,60 Ohio St.3d at 122. *Page 10 
 {¶ 41} Appellant did not move to amend her counterclaim until a May 11, 2004 status conference. By this time, the case had been decided on summary judgment, appealed, reversed and remanded on appeal, and set for trial. The trial was set for just over a month away. Thus, appellant's motion was not in any way timely.
 {¶ 42} Furthermore, appellant was aware of her claim for damages resulting from mold as early as 1997. In her April 29, 2002 deposition, appellant specifically discussed her claim for damages resulting from mold. (Blake dep. 98-99). In fact, she stated that her condo had mold damage dating back to the winter of 1997 and the spring of 1998. (Blake dep. 106-107). And she stated that she had "mold issues" and resulting breathing problems in October 1998. (Blake dep. 111). Given appellant's statements in her deposition, she was clearly aware of the alleged mold damage to her condo long before she filed her counterclaim.
 {¶ 43} Thus, the trial court did not abuse its discretion in denying appellant's request to amend her counterclaim. Appellant should have made her claim for damage to her condo in her original counterclaim, which she filed in 2001. And if the failure to include this claim was an oversight, there is no explanation why appellant waited three and a half years to move to amend her counterclaim. Accordingly, appellant's third assignment of error is without merit.
 {¶ 44} Appellant's fourth assignment of error states:
 {¶ 45} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY COMMENCING WITH TRIAL DESPITE THE FACT OPPOSING PARTY FAILED TO ANSWER INTERROGATORIES REQUESTED, UNJUSTLY LIMITING DISCOVERY."
 {¶ 46} Appellant contends here that the trial court should have continued the trial because the "opposing party" failed to respond to her April 26, 2002 interrogatories.
 {¶ 47} However, appellee asserts that the interrogatories appellant refers to were served on Marjorie Sponcil, Dee Brintzenhofe, and Wayne Sitler. These individuals were originally named as defendants by appellant in her counterclaim. *Page 11 
But they were subsequently dismissed in March 2002. Additionally, appellee points out, appellant never filed a motion to compel as required by Civ. R. 37, nor did she ever bring to the trial court's attention that she believed that discovery was outstanding. Thus, it argues that she cannot now raise this issue on appeal.
 {¶ 48} Appellant has waived this issue for review. As appellee points out, appellant never raised this issue with the trial court. Furthermore, as appellee also notes, appellant served interrogatories on parties that were dismissed from this case before she ever filed the interrogatories. Thus, they had no duty to respond.
 {¶ 49} Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 50} Appellant's fifth assignment of error states:
 {¶ 51} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY NOT HOLDING ASSOCIATION RESPONSIBLE FOR ANY OF WHAT THE COURT TERMED `PREEXISTING DAMAGES' WHEN ALL DAMAGES WERE PAID COVERED INSURANCE CLAIMS MADE BY THE ASSOCIATION, WHO HAD SOLE CONTROL OF DAMAGES AND REPAIR OR LACK THEREOF."
 {¶ 52} The gist of appellant's argument here seems to be that the trial court erred in ruling in appellee's favor on her counterclaim. We can construe her argument as contending that the court's judgment on her counterclaim was against the weight of the evidence.
 {¶ 53} A judgment supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. Willett v. Felger (Mar. 29, 1999), 7th Dist. No. 96-CP-40; Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, 638 N.E.2d 533. Furthermore, in considering whether a judgment is against the manifest weight of the evidence, it is important that this court be guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273. If the evidence is susceptible to more than one interpretation, we must construe the evidence consistently with the trial court's judgment. Gerijo, 70 Ohio St.3d at 226. *Page 12 
 {¶ 54} Here the evidence supports the trial court's determinations.
 {¶ 55} Appellant testified that she believed that the walkway, including the steps, her storage unit, and her pipes were all appellee's responsibility to repair because she alleged that they were all part of the common area of the condominium association.
 {¶ 56} But in Exhibit 6, the Declaration defines what constitutes common area, for which appellee is responsible for maintaining and repairing, and what constitutes individual condominium space, for which each individual owner is responsible for maintaining and repairing. The Declaration specifically states, in part:
 {¶ 57} "C. Each Unit shall be a separate freehold estate consisting of the space bounded by and contained within the undecorated interior surfaces of the perimeter walls; the unfinished surface of the floors and ceilings; the windows and doors of each Unit; and all improvements within that space. Without limiting the generality of the foregoing, or, as appropriate, in addition, each Unit shall include:
 {¶ 58} "* * *
 {¶ 59} "3. All fixtures and appliances installed for the exclusive use of that Unit, commencing at the point of disconnecting from the structural body of the building and from utility pipes, lines, or systems serving more than one Unit thereof[.]
 {¶ 60} "7. The attached deck, if any, in its entirety; but shall not include:
 {¶ 61} "* * *
 {¶ 62} "2. All plumbing, electric, heating, cooling, and other utility or service lines, pipes, sump pumps, and accessories thereto, wires, ducts, and conduits which serve any other Unit." (Exhibit 6, Item V, Section C).
 {¶ 63} Thus, the Declaration makes clear that each individual owner is responsible for the pipes that service only his or her condo. And each individual owner is responsible for their attached deck "in its entirety."
 {¶ 64} Additionally, Margery Sponcil [sic.], appellee's past president, testified that the walkway and deck are not part of the common area for which appellee is responsible. (Tr. 143). Instead, they are part of the deck "in its entirety." (Tr. 157). *Page 13 
She also testified regarding Plaintiff's Exhibit 10. Exhibit 10 is a picture of appellant's deck and walkway, with attached stairs. The picture depicts a short set of stairs leading up to a walkway, which is partially enclosed and partially open. These stairs and walkway are for appellant's exclusive use and do not lead to any other condo. (Tr. 167).
 {¶ 65} Furthermore, appellant testified that her storage unit was exclusively for her use. (Tr. 87). She also testified that the prior owner of her condo hired a repairman to fix the pipes prior to her purchasing the condo. (Tr. 106). Thus, she should have known that the pipes were the responsibility of the condo owner and not appellee. And appellant testified that the water damage to her carport was caused by the pipes to her condo. (Tr. 115).
 {¶ 66} Thus, the evidence demonstrated that the steps, walkway, deck, pipes, and storage shed were all for the exclusive use of appellant's condo. Furthermore, the parties did not dispute that appellee is responsible for all common areas while appellant is responsible for all areas that are a part of her condo. Thus, it was reasonable for the court to find that appellee was not responsible for repairing these areas. Therefore, the court's judgment in favor of appellee on appellant's counterclaim was not against the weight of the evidence.
 {¶ 67} Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 68} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, P.J., concurs.
[1] This court determined that we would not consider her first two briefs as they did not comply with the Appellate Rules. *Page 1